FILED'08 OCT 28 11:42USDC-ORM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RODNEY L. SANER,

               Petitioner,          Civil No. 07-1196-CL

           v.                REPORT AND
                                        RECOMMENDATION

MARK NOOTH,

               Respondent.

CLARKE, Magistrate Judge.

     Petitioner in this proceeding for habeas corpus relief under 28 U.S.C. § 2254 is an inmate in the custody of the Oregon Department of Corrections.

     The background facts are as follows:  Petitioner was married to Deanna Mathis for approximately 30 years, but in March 2004, she filed for divorce.  Ms. Mathis continued living in the LaPine, Oregon area where she and petitioner had lived together, and began dating Richard Simon.  Subsequently, petitioner made several threats to kill Mathis and Simon.

     On July 29, 2004, after petitioner was served with a

1 - REPORT AND RECOMMENDATION

restraining order obtained by Mathis, petitioner drove to see a friend, Al Ealum, who lived at the Cascade Meadows RV Resort and obtained a shotgun and a pistol that Ealum had been "holding" for petitioner because petitioner was prohibited from possessing weapons pursuant to an earlier restraining order.

Petitioner then drove to see his daughter, Jeanne Watters, and told her that he was going to look for Mathis and Simon. Petitioner then drove around the LaPine area, twice stopping at a tavern that Simon frequented. Petitioner did not encounter Mathis or Simon and returned to the RV park.

Later that evening petitioner was arrested by police. At the time of his arrest he did not have the guns in his possession.

After a court trial, the judge found petitioner guilty of two counts of Attempted Murder and two counts of Unlawful Use of a Weapon and sentenced petitioner to a total of 90 months imprisonment. Petitioner directly appealed his attempted murder convictions and the sentences on the weapons convictions, but the Oregon Court of Appeals affirmed without opinion. The Oregon Supreme Court denied review. Respondent's Answer (#18).

Petitioner filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 alleging: "The defendant's convictions for attempted murder violated the Due Process clause of the Fourteenth Amendment to the United States Constitution. Under

Jackson v. Virginia, 443 U.S. 307, 317-318, no rationale trier
of fact could have found defendant guilty of the charges on
the evidence presented.  Therefore, the evidence in support of
defendant's conviction is insufficient to sustain his
conviction."  Petition (#1) p. 6.

Petitioner argues that he did not engage in conduct
constituting a "substantial step toward the commission of
murder" and that therefore the evidence presented to the trial
court was insufficient to sustain his conviction(s) for
attempted murder.  Id.

Respondent moves to deny petitioner's petition and
dismiss this proceeding on the grounds that 1.) petitioner
procedurally defaulted his claim; 2.) the state court
decisions denying petitioner relief are entitled to deference
under 28 U.S.C. § 2254(d) and (e)(1); and 3.) the claim is
meritless.  See, Response (#17), p. 1.

Procedural default: A state prisoner must exhaust all
available state remedies either on direct appeal or through
collateral proceedings (e.g. state post-conviction relief)
before a federal court may consider federal habeas corpus
relief. 28 U.S.C. § 2254(b)(1); O'Sullivan v. Boerckel, 526
U.S. 838, 842 (1999);  Coleman v. Thompson, 501 U.S. 722
(1991) [requiring dismissal of federal petition unless all
available state remedies as to all federal claims are
exhausted]. The essence of the requirement is that no state
remedy exists at the time the petition was filed.  Rose v.

3 - REPORT AND RECOMMENDATION

Lundy, 455 U.S. 509 (1982). A prisoner satisfies the exhaustion requirement by "fairly presenting" his claims to the highest state court with jurisdiction to consider them, thereby "afford[ing] the state courts a meaningful opportunity to consider [the] allegations of legal error." Vasquez v. Hillary, 474 U.S. 254 (1986); see also, Duncan v. Henry, 513 U.S. 364 (1995). In Oregon, this requirement is satisfied when the claim is fairly presented to the state supreme court. Peterson v. Lampert, 319 F.3d 1153, 1156 (9ᵗʰ Cir. 2003).

A prisoner fairly presents his claims by describing in the state court proceeding both the operative facts and the legal theory on which his claim is based. Id., Anderson v. Harless, 459 U.S. 4 (1982); Guizar v. Estelle, 843 F.2d 371 (9ᵗʰ Cir. 1988); Tamapua v. Shimoda, 796 F.2d 261, 262 (9ᵗʰ Cir. 1986). The claim must be specifically characterized in the state proceedings as "federal," Castillo v. McFadden, 370 F.3d 882, 886 (9ᵗʰ Cir. 2004); Baldwin v. Reese, 541 U.S. 27 (2004), and allege facts showing a right to relief. Gray v. Netherland, 518 U.S. 152, 162-63 (1996); Kelly v. Small, 315 F.3d 1063, 1066 (9ᵗʰ Cir. 2003). State appellate courts are "not required to comb the trial court's decision to discover" the federal issue. Castillo, 370 F.3d at 887.

Furthermore a petitioner must present the federal claims in a procedural context in which their merits will be considered. Castille v. Peoples, 489 U.S. 346, 351-52 (1989) (claim not fairly presented when raised for the first time on

petition for review to state Supreme Court); <u>Roettgen v.
Copeland</u>, 33 F.3d 36, 38 (9th Cir. 1994) (failure to exhaust
because claim was presented in a procedurally defective
manner); <u>see also</u>, <u>Turner v. Compoy</u>, 827 F.2d 526, 529 (9th
Cir. 1987), cert. denied, 489 U.S. 1059, (if a state "mandates
a particular procedure to be used to the exclusion of other
avenues of seeking relief, the correct avenue must be fully
exhausted).

    If a petitioner does not fairly present his federal
claims in state court, and can no longer do so because they
are procedurally barred under state law, the claims are
technically exhausted. <u>Coleman v Thompson</u>, <u>supra</u>; <u>Johnson v.
Zenon</u>, 88 F.3d 828, 829 (9th Cir. 1996). In such cases, the
claims are procedurally defaulted in federal court because
they were not *properly* exhausted, <u>O'Sullivan</u>, 526 U.S. at 848.
Federal habeas review is barred unless the prisoner can
demonstrate cause for the procedural default and actual
prejudice, or demonstrate that the failure to consider the
claims will result in a miscarriage of justice. <u>Wainwright v.
Sykes</u>, 433 U.S. 72 (1977); <u>Noltie v. Peterson</u>, 9 F.3d 802,
804-05 (9th Cir. 1993).

    Respondent contends that petitioner did not adequately
preserve the legal claim he raises in this case because he did
not move for judgment of acquittal on the attempted murder

charges[1] and  "simply argued that *factually* he was not guilty
of those charges because he had not taken a 'substantial step'
towards the commission of the murder." Response to Habeas
Corpus Petition (#17), p. 5-6.

Because the trial court verdict was affirmed without
opinion, this court does not have the benefit of a state court
determination of whether petitioner's challenge to the legal
sufficiency of the evidence was properly preserved.  Under
such circumstances, the federal habeas court must determine
the issue.  See, <u>Hunter v. Aispuro</u>, 982 F.2d 344, 348 (9th Cir.
1992).

To preserve an argument for appeal in Oregon, the error
must be "properly raised and preserved in the lower court."
ORAP 5.45(4)(a).  The appellant must have made the argument
with sufficient particularity to allow the trial court to rule
on the argument and correct any error.  <u>State v. Wyatt</u>, 331 Or
335, 343, 15 P3d 22 (2000).  "In determining whether an
assignment of error is preserved, the most significant
question is whether the trial court had an opportunity to make
a right decision."  <u>State ex rel Juv. Dep't v. Tyree</u>, 177 Or
App 187, 190, 33 P3d 729 (2001).

In <u>State v. Forrester</u>, 203 Or App 151, 155, 125 P.3d 47,

---

[1]At the close of the state's case, petitioner's counsel moved
for a judgment of acquittal on Counts 5 and 6, the Unlawful
Use of a Weapon charges.  Exhibit 104, p. 236-241.  The motion
was denied.  However, counsel did not move for a judgment of
acquittal on the attempted murder charges.

49 (2005), the Oregon Court of Appeals held:

> To preserve a claim of error concerning the legal
> sufficiency of the state's evidence, a defendant
> must - even in a case tried to the court -
> challenge the legal sufficiency of the evidence at
> trial.   Although  certainly  the  best  way  to
> accomplish that is to move for a judgment of
> acquittal, such a motion is not necessary as long
> as a defendant clearly raises the issue in closing
> argument. <u>State v. Gonzales</u>, 188 Or App 430, 71
> P.3d 573 (2003); <u>State v. Andrews</u>, 174 Or App 354,
> 27 P.3d 137 (2001).

Petitioner argues that he preserved the claim in his
closing argument by challenging the sufficiency of the
evidence as to the stalking count of the indictment and as to
the substantial step element of attempt. Petitioner's Brief
(#25), p. 12.

Respondent argues that "[a]t trial, petitioner only
argued *as a factual matter* the trial court should find that
the state prove the element, a substantial step, beyond a
reasonable doubt. <u>See</u>, Tr. 380 and 392-393.   This factual
argument was not sufficient to alert the trial court he was
raising a *legal claim* that the court had violated some federal
right." (sic) Sur-response to Habeas Corpus Petition (#30),
p. 4.

A legal insufficiency claim  and a factual failure of
proof claim are required to be distinguished for purposes of
preserving the separate issues for appeal. <u>See</u>, <u>State v.</u>
<u>Lovins</u>, 177 Or.App 534, 537, 33 P.3d 1060 (2001); <u>Peiffer v.</u>
<u>Hoyt</u>, 186 Or.App 485, 63 P.3d 1273 (2003). However, the
arguments  in  support  of  such  claims  may  be  similar.

7 - REPORT AND RECOMMENDATION

Petitioner's counsel did not specifically state that he was making a legal sufficiency rather than a burden of proof argument, but counsel's arguments can reasonably be interpreted as applying to either a factual or a legal claim.

In <u>Forrester</u> the court found that counsel's closing argument that "[t]his is not enough" was sufficient to preserve a claim that the facts established at the defendant's trial were "legally insufficient to establish the element of extreme indifference." <u>State v. Forrester</u> 203 Or.App 151 at 155.

In this case, although it is a close question, I find that counsel's argument can be liberally construed as encompassing due process challenge to the legally sufficiency of the evidence and afforded the trial court a "realistic opportunity to make the right decision." <u>State ex rel Juv. Dept. v. Tyree</u>, <u>supra</u> at 190.

Respondent further argues that petitioner procedurally defaulted his claim because he did not fairly present the federal due process issue to Oregon appellate courts. Response to Habeas Corpus Petition (#17), p. 6.

Petitioner's direct appeal brief Assignment of Error No. 3 alleged: "The court erred by failing to grant judgments of acquittal on the attempted murder charges in Counts 1 and 2." Respondent's Exhibit 105, p. 8. The Standard of Review concerning Error No. 3 was presented as follows:

> In reviewing a motion for judgment of acquittal,
> this court views the evidence in the light most

favorable to the state to determine whether a
rationale factfinder could find that the state had
proven every element of the offense beyond a
reasonable doubt. U.S. Const. Amend XIV; <u>Wright v.
West</u>, 505 U.S. 277, 112 S.Ct 2483, 129 L Ed 225,
233 (1992); ORS 136.445; <u>State v. Hall</u> 327 Or 568,
570, 966 P2d 208 (1998).

Thus, petitioner presented 1.) his claim under the Due

Process Clause of the Fourteenth Amendment; 2.) cited an

Oregon state court case which presents the Constitutional Due

Process standard for evidence sufficient to support a

conviction, and 3.) cited a United States Supreme Court case

which applied the sufficiency of the evidence standard to a

constitutional due process claim.

I find that citing the relevant clause of the United

States Constitution and a federal appellate case interpreting

that Constitutional provision in addition to the state court

case citation was sufficient to alert the state court to the

fact that petitioner was making a federal claim. <u>See</u>, <u>Lyons</u>

<u>v. Crawford</u>, 232 F.3d 666, 668 (9th Cir. 2000).

The Oregon Court of Appeals affirmed petitioner's

convictions without opinion, and petitioner petitioned the

Oregon Supreme Court for review. Petitioner's pro se petition

repeated the assignment of error quoted above and cited the

Fourteenth Amendment and <u>Wright v. West</u>. Respondent's Exhibit

107, p. 3. Petitioner's appellate counsel also cited the

Fourteenth Amendment and argued that petitioner's convictions

were "unsupported by the evidentiary record, as a matter of

statutory and constitutional law." Exhibit 108, p. 6.

Counsel's argument focused on the specific intent aspect of attempt rather than the sufficiency of evidence aspect. However, counsel's brief concluded: "The evidence in this record does not support a conviction for attempted assault, much less attempted murder, as a matter of federal due process law." Id., p. 15.

I find that counsel's argument, liberally construed, in conjunction with petitioner's pro se brief was sufficient to afford the Oregon Supreme Court an opportunity to review the constitutional claim at issue in this proceeding.

The procedural default issue in this case is a very close call. The trial court record, specifically the motion for directed verdict, closing argument and the court's comments and discussion of the verdict are subject to different reasonable interpretations. The state court appellate briefs do not focus on the specific constitutional claim raised in this proceeding, but they arguably raise the issue. Because the trial court verdict was affirmed without opinion and denied review by the Oregon Supreme Court, this court does not have the benefit of the state court's opinion of whether the claim was properly preserved or raised and considered on appeal. Under these circumstances I find that the record should be construed against procedural default and that this court should consider and determine the merits of petitioner's claim.

<u>Deference to state court findings:</u> [2] Under 28 U.S.C. § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct" unless the petitioner rebuts "the presumption of correctness by clear and convincing evidence." Under 28 U.S.C. § 2254(d), habeas relief may not be granted on any claim that was adjudicated on the merits in state court, unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

Respondent argues that "the state findings are entitled to deference under § 2254(d) and (e)(1)." Response to Habeas Petition (17), p. 11.

However, I find that the AEDPA deference provisions are not strictly applicable to the state court "findings" at issue in this proceeding.

The trial court found that petitioner's conduct constituted a "substantial step" for purposes of the attempted

---

[2]Respondent argues that "[t]he state PCR court found against petitioner (Exhibit 113) on all the claims he now raises in the federal habeas petition. Those findings are entitled to deference under 28 U.S.C. § 2254(d) and (e)(1)." Response to Habeas Petition (#17) p. 7.

This paragraph was apparently inadvertently included in respondent's brief, or is otherwise a mistake. Petitioner in this case did not file a post-conviction appeal and respondent has not filed an "Exhibit 113."

11 - REPORT AND RECOMMENDATION

murder convictions. <u>See</u>, Tr. p. 434-439.  This is not a "factual" finding per se, but rather a conclusion based on the historical facts presented at petitioner's trial.

Whether or not the facts presented at petitioner's trial constituted a "substantial step" is a mixed question of law and fact.  In deciding a case of mixed law and fact, "the federal court may give different weight to the facts as found by the state court and may reach a different conclusion in light of the legal standard." <u>Summer v. Mata</u>, 102 S.Ct. 1306-1307, (1982).  It is the questions of fact that underlie the ultimate conclusion that are governed by the statutory presumption.  <u>Id</u>.[3]

The trial court's conclusion that petitioner's conduct amounted to a "substantial step" is not the type of "factual issue" subject to the presumption of correctness under 28 U.S.C.§ 2254(e)(1) or a "determination of the fact" under § 2254(d)(2).

28 U.S.C. § 2254(d)(1) relates to "unreasonable application(s) of, clearly established federal law, as determined by the Supreme Court of the United States."

Respondent's position, as discussed above, is that no question of federal law was ever presented to the trial court or preserved on appeal.  The logical extension of (and

_____

[3]At the time <u>Summer</u> was decided in 1982, the statutory presumption of correctness was contained in 28 U.S.C. § 2254(d)(1).  However, the essential text and intent of the presumption is the same under the 1996 amendments to the habeas statutes.

conclusion from) this argument is that there was no consideration or "application" of federal law by the state courts.

Although I disagree with respondent's position to the extent set forth above (i.e. I find that the claim was not defaulted for purposes of federal habeas corpus jurisdiction), it is impossible to determine from the state court record to what extent, if any, the federal issue was considered or "applied" by the state courts. Accordingly, I find that 28 U.S.C. § 2254(d)(1) does not apply to petitioner's claim in this case.

<u>Sufficiency of the evidence:</u>  In <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979), the Supreme Court ruled that the standard for determining the sufficiency of the evidence "is whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." [emphasis in original].

Petitioner argues that the evidence presented at petitioner's trial was insufficient to establish facts from which a rational trier of fact could find that petitioner took a "substantial step towards the commission of the crime" for purposes of petitioner's attempted murder convictions. Petitioner argues that the conduct leading to his conviction was merely "acting out" of "angry thoughts." Petitioner's Brief (#25), p. 33.

13 - REPORT AND RECOMMENDATION

Respondent argues that "[p]etitioner's attempt to commit the murders of Mathis and Simons were complete at the time he obtained firearms and began his hunt.  This is true because petitioner had repeatedly expressed (sic) his intent to kill Mathis and Simons by shooting them.  He then obtained the instrumentalities, the guns, while repeating his intent ...." Sur-Reply to Habeas Corpus Petition (#30), p. 10.

The issue before the court is whether viewing the evidence presented at petitioner's trial in a light most favorable to the state, "*any* rational trier of fact could have found the elements of the crime beyond a reasonable doubt." Jackson v. Virginia, supra.  Although this court may have reached a different result, I find that the answer to this question is yes.

In determining whether petitioner had taken a substantial step towards intentionally killing Mathis and Simon, the trial judge referred to the "Oregon code commentary."  Tr. p. 436. In that commentary, and as noted by the trial court, the Oregon Criminal Law Revision Commission specifically listed the Model Penal Code provision "searching for or following the contemplated victim of the crime" as one of the acts "which should not be held insufficient as a matter of law to constitute a substantial step." Commentary to Oregon Criminal Code of 1971 at p. 49; see, Response to Habeas Corpus Petition (#17) attachment 2.

The trial judge found: "So at this point in my analysis,

what I am saying is that I find that the defendant did take a substantial step, did intentionally attempt to kill Deanna Mathis and Rick Simon.  And was taking a substantial step or substantial steps by his conduct in obtaining this 12-gauge shotgun and looking for them, with the intent to kill them that day."  Tr. p. 437.  The court went on to find that petitioner had not renunciated his intent even though he did not have the weapons in his possession when he was arrested. Id.[4]

Petitioner testified that he only possessed the guns for a few minutes.  However, the testimony of Walter Ealum (Exhibit 103 at p. 169-172) taken in the light most favorable to the state could enable a rational trier of fact to find that petitioner was in possession of the shotgun while he was driving around LaPine looking for Mathis and Simon.

The conclusion that the facts relied upon by the trial judge were sufficient to enable a rational trier of fact to find that petitioner had taken a "substantial step" towards the commission of murder is supported by Bright v. State, 740 A.2d 927 (Del. 1999) and Pennsylvania v. Donton, 654 A.2d 580 (Pa. Super. Ct. 1995).  As noted by respondent, "although [these cases] are not binding on this court, they are persuasive in their striking similarities to this case and their holdings." Sur-Response to Habeas Corpus Petition (#30),

---

[4]Although Respondent's Sur-Response (#30) discusses the renunciation defense, it was  not raised on appeal and it is not alleged as a claim in this proceeding.

p. 11.

The courts in <u>Bright</u> and <u>Donton</u> both found that a combination of threats, weapons and searching for the victim constituted a substantial step towards the commission of murder. The same combination of factors was present in petitioner's case.

<u>Threats:</u> The following evidence was presented that petitioner threatened and/or stated an intention to kill Mathis and Simon.

Rick Simon testified that after he began dating Ms. Mathis petitioner threatened to kill him. Exhibit 103, [herein after "Tr."] p. 68.

Mr. Simon testified that in June 2004 petitioner told him that he would kill Ms. Mathis and Simon "three [or] four times." Tr. p. 70. Mr. Simon testified that petitioner stated twice during phone calls to him that he would be shot with "00-buck." Tr. p. 72.

Ronda Everaert, an employee of the Homestead Tavern testified that in "about May" she heard petitioner say that he wanted to kill Rick Simon. Tr. p. 133-135.

Walter Ealum testified that petitioner had told him "several times" that if he saw Ms. Mathis with another man he would shoot them both. Tr. p. 167-168.

<u>Weapons:</u> The prosecution presented the following evidence that petitioner obtained and possessed weapons on the day he was arrested.

Deputy Sheriff Ronny Dozier testified that on July 29, 2004, the day petitioner was arrested, petitioner angrily told him that he was going to "take care of [Mathis] right now..." Dozier further testified that petitioner stated he "was going to get his guns, ... and we were going to have a shootout." Tr. p. 103.

Allen Ealum testified that at "10 minutes to 4:00" on July 29, 2004, petitioner demanded his firearms back stating "if they want war, he'd give them war, and he was going hunting." Mr. Ealum also testified that he remembered telling Deputy Manning that petitioner stated he was "going to hunt and kill Deanna and her boyfriend [5], and whoever gets in the way." Tr. 112- 116.

Petitioner testified that about five minutes after retrieving the guns he returned them to Allen Ealum's pickup truck.   Tr. 288-289, 324.

However, there was other evidence from which a rational trier of fact could find that petitioner possessed the guns while searching for Mathis and Simon.    As cited below, petitioner told his daughter Jeanne Watters he had "got his guns" and "was going after them."  In addition, Walter Ealum testified that  he saw petitioner return to the RV park and put a shot gun in Allen Ealum's pickup truck a "couple hours

[5]Mr. Ealum clarified his testimony as follows: "I do remember him saying that, but he didn't actually say their names.  That was my own interpretation of what was going on." Exhibit 103, p. 116.

later" ... "somewhere around" 4:30 or 5:00 in the afternoon. Tr. 169-171.

Deputy Sheriff Daniel Bilyeu testified that the items recovered from Mr. Ealum's truck included a shotgun and shotgun shells that were compatible with the shotgun, and a handgun and ammunition that was not compatible with the handgun. Both weapons were operational. Tr. p. 217-219.

Searching: Evidence was presented that after petitioner obtained the guns from Allen Ealum, he went searching for Mathis and Simon.

Petitioner's daughter, Jeanne Watters testified that petitioner came to her house in the afternoon of the day he was arrested and stated that he had "got his guns" and "he was going after them." Tr. p. 167.

Ronda Everaert testified that on the day petitioner was arrested he entered the Homestead Tavern despite having previously been "86d" (banned) from the establishment after the "confrontation [with Mr. Simon] over at the LaPine Inn." Tr. p. 135. Ms. Everaert testified Mr. Simon was a "regular" at the Homestead Tavern.[6] Tr. p. 137-138.

Ms. Everaert testified that petitioner walked through the bar "around 5:30, 5:45" p.m. looking "very, very upset, on a mission." Tr. p. 136. Ms. Evereart further testified that petitioner did not say anything; he just walked in one door

---

[6]Both Mathis and Simon were known to frequent the Homestead Tavern. See, Exhibit 103, pp. 66-67, 72-73 and 133-134.

and out the other and just "looked," and then did the same thing about 45 minutes later. Tr. p. 136-139.

Petitioner argues that based on the time-line of events established by the testimony at petitioner's trial it was "impossible" for petitioner to have possessed the shotgun while at the Homestead. Petitioner's Brief (#25), p. 18-19.

Al Ealum testified that petitioner "demanded" his guns at 10 minutes to 4:00." Tr. 112.   He was certain of the time because he "looked at the clock" Id.   After several demands for the guns  petitioner and Ealum walked a short distance to Ealum's house and Ealum relinquished the guns to petitioner. Tr. 112 - 113.

Walter Ealum testified that petitioner returned the shotgun to Al Ealum's truck "somewhere around 4:30 - 5:00," he was "not really sure."   Tr. 170.   It was "a couple hours later" from the time Mr. Ealum first saw petitioner at the RV park that day. Id.

Ms. Everaert's testimony that petitioner first walked through the Homestead "around 5:30, 5:45," Tr. p. 136, was based on the fact that it was early in her shift which began at either 4:00 or 5:00. Tr. 135 - 136.

Jeanne Watters testified that her father arrived at her house "[p]robably around 3:00." Tr. 155.   However, she subsequently acknowledged that "it could have been about four o'clock."  Tr. 162.  The other evidence establishes that it

must have been  "about 4:00."[7]

Thus, petitioner's time-line of events argument is based on the witness's *estimates* of the times certain events occurred and does not necessarily establish that it was "impossible" for petitioner to have been in possession of the shotgun at the time he went to the Homestead looking for Mathis and Simons.

Moreover, whether or not petitioner possessed the shotgun *while at the Homestead* does not seem to have been a decisive fact in the trial judge's analysis. The judge  considered the attempt to have been committed when, after previously making threats to kill Mathis and Simons, petitioner took the "substantial step" of obtaining the weapons and "looking for them with the intent to kill them that day." Tr. 437.  A rational trier of fact could have found that petitioner  was "looking for them" when he left the RV Park.

I find that a rational trier of fact could have found from the evidence presented at petitioner's trial that petitioner made  threats and statements about killing Mathis and Simon, obtained weapons and went searching for them.  As discussed above, there is law that indicates this combination of facts constitutes a "substantial step" for purposes of an

_____

[7]Ms. Watters testified that Deputy Malloy arrived at her house 20 minutes after petitioner left.  Tr. 159.  Al Ealum testified that he had "Cheryl" call the sheriff's office about petitioner after petitioner left the RV park shortly after 4:00.

attempted murder charge.

Summary: Although this case presents difficult questions, the "bottom line" is quite straightforward. The dispositive issue is whether a rational trier of fact could have found from the evidence presented at petitioner's trial that petitioner had taken a "substantial step" towards attempting to murder Mathis and Simons.

Although a rational trier of fact may have concluded that petitioner was merely having "very bad thoughts" and "acting out" as argued by petitioner, a different rational trier of fact could find that petitioner's actions were sufficient to satisfy the substantial step element of an attempt offense.

The trial judge found that petitioner had taken a substantial step by obtaining a shotgun and "looking for them, with the intent to kill them that day."[8]

The Oregon Code Commentary suggests that "searching for or following the contemplated victim of a crime" are acts "which should not be held insufficient as a matter of law to constitute a substantial step." In addition, courts in Delaware and Pennsylvania have found that the combination of threats, weapons, and searching for the victim, facts that were present in this case, constituted a substantial step toward the commission of murder.

---

[8]There was ample testimony at trial that petitioner repeatedly threatened to kill Mathis and Simons. A rational trier of fact could conclude from the testimony about petitioner's statements that he intended to do so.

Based on all of the foregoing I find that the evidence presented at petitioner's trial was legally sufficient for a rational trier of fact to find that petitioner took a substantial step towards the commission of murder. Petitioner's Petition (#1) should be denied. This proceeding should be dismissed.

*This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals*. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. *Objections to this Report and Recommendation, if any, are due by November 13, 2008. If objections are filed, any responses to the objections are due within 10 days, see Federal Rules of Civil Procedure 72 and 6*. Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

DATED this 27 day of October, 2008.

Mark D. Clarke
United States Magistrate Judge

22 - REPORT AND RECOMMENDATION